**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1832-WJM

SHAWNA LEANN HIGGINS,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

    Defendant.

**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Shawna Leann Higgins challenges the final decision of Defendant Andrew M. Saul, the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits and Supplemental Security Income ("SSI"). The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Higgins was not disabled within the meaning of the Social Security Act. This appeal followed.

For the following reasons, the ALJ's decision is affirmed.

**I. BACKGROUND**

Higgins was born on March 26, 1968 and was 47 years old on the alleged disability onset date of April 9, 2015. (Administrative Record ("R.") (ECF No. 12) at 101.) Higgins graduated from high school and previously worked as a deputy clerk and an order specialist. (R. at 32.)

Higgins applied for disability insurance benefits and SSI on December 13, 2016. (R. at 198–209.)  Higgins alleged that she was disabled due to the following conditions: rheumatoid arthritis, asthma, fibromyalgia, high blood pressure, depression, anxiety, post-traumatic stress disorder ("PTSD"), borderline personality disorder, and migraines beginning in April 2015.  (R. at 101–02, 114–15, 234.)  She later amended the disability onset date to January 30, 2016.  (R. at 46, 289.)  Her application was denied on September 21, 2017.  (R. at 97–99.)

## II. THE ALJ'S DECISION

After the denial of benefits, Higgins requested a hearing and appeared before ALJ Shane McGovern.  (R. at 10–18, 68–69.)  On August 12, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  (R. at 14–33.)

At step one, the ALJ found that Higgins had not engaged in substantial gainful activity from her alleged onset date of January 30, 2016.  (R. at 17.)

At step two, the ALJ found that Higgins suffered from the following severe impairments: rheumatoid arthritis, myopathy, asthma, migraines, hypertension, and restless leg syndrome.  (*Id.*)  The ALJ did not find that any other claimed condition was a severe impairment but found that Higgins's mild hearing loss/subjective tinnitus was a non-severe medically determinable impairment.  (*Id.*)

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

At step three, the ALJ found that Higgins's impairments did not meet or medically equal any impairments listed in the Social Security regulations. (R. at 20.)

Before proceeding to step four, the ALJ assessed Higgins's residual functional capacity ("RFC"). (R. at 21.) The ALJ concluded that Higgins had the RFC to perform the demands of:

> sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except no ladders, ropes or scaffolds, no crawl[ing], occasional ramps and stairs, occasional balance[ing], stoop[ing], crouch[ing] and kneel[ing], frequent handling, fingering and feeling bilaterally, no exposure to moving mechanical parts, unprotected heights, or excessive vibration.

(*Id.*)

At step four, the ALJ found that Higgins had the RFC to perform her past relevant work as an order specialist. (R. at 32.) Accordingly, the ALJ concluded that Higgins was not disabled under the Social Security Act and was not entitled to disability insurance benefits or SSI. (R. at 32–33.) Higgins appealed to the Social Security Appeals Council, which denied review. (R. at 1.) She filed this action on June 22, 2020. (ECF No. 1.)

### III. LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is

3

overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## IV. ANALYSIS

Higgins advances two grounds on which she argues the Court should vacate the ALJ's decision: (1) the ALJ erred in calculating her RFC, and (2) the ALJ did not assign controlling weight to the opinions of her treating physician.  (ECF No. 13 at 3–9.)

**A.     RFC Evaluation**

Higgins asserts that the ALJ erred because he did not include her mental functioning limitations in his RFC determinations despite finding that she had mild limitations at step two of his analysis.[2]  (ECF No. 13 at 5.)  Higgins does not challenge the ALJ's finding that her limitations rose to only a mild level of severity; however, she contends that the ALJ should have more thoroughly considered these mild limitations in the RFC analysis and concluded that she was unable to perform her prior semi-skilled work as an order specialist.  (*Id.* at 4–5.)

An ALJ is not required to include mental functioning as part of the RFC calculation where a claimant suffers from only mild limitations which would not impact her ability to work.  *See Valdez v. Berryhill*, 2017 WL 5988652, at *3 (D. Colo. Dec. 4,

---

[2] Specifically, the ALJ found that Higgins had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing herself.  (R. at 19–20.)

4

2017) (affirming denial of benefits where ALJ discussed mental functioning at step two and determined that claimant's mild impairments would not impact her ability to work and therefore did not affect the RFC evaluation).

Here, the ALJ thoroughly discussed Higgins's mental functioning in step two of his analysis. (R. at 17–20.) He also discussed the treatment records regarding her mental functioning in his calculation of the RFC, including Higgins's own statements that her speech, affect, ability to follow commands, concentration, memory, and judgment were intact. (R. at 24, 28–32.) Considering the weight of this evidence, which included Higgins's most recent examination of May 2019, he concluded that Higgins's "benign . . . mental examinations" did not support a finding of disability. (R. at 31–32.) The ALJ therefore found that Higgins's mild mental functioning limitations would not impact her ability to perform sedentary work. (R. at 32.) Further, to the extent that Higgins suggests that a finding of a mild mental functioning limitation necessarily precludes semi-skilled work, district judges in the District of Colorado have rejected such a contention. *See Valdez*, 2017 WL 5988652, at *4 (finding that ALJ's conclusion that claimant was capable of semi-skilled work did not change analysis as to mild mental functioning limitations).

Higgins has not set forth a convincing basis to conclude that the ALJ erred in his RFC analysis, nor that, had the ALJ in fact committed error, that it is not harmless. As such, the Court finds that the ALJ's evaluation of Higgins's RFC is supported by substantial evidence and declines to vacate the decision on this ground.

**B.     Weighing of Physician Opinions**

Higgins also contends that the ALJ erred by failing to assign controlling weight to the opinions of her treating physician, Dr. Erin Arthur.  (ECF No. 13 at 6.)  Specifically, Dr. Arthur issued three opinions contained in the record: a 2017 opinion finding that Higgins was capable of light work, a 2019 statement that Higgins was not capable of full-time work, and another 2019 opinion that Higgins's limitations precluded any work. (R. at 1236–37, 1594–96, 1683.)  Agency physician Dr. James McElhinney also issued an opinion in 2017 that Higgins was capable of light work.  (R. at 114–26.)  The ALJ gave limited weight to both physicians' 2017 opinions and discounted Dr. Arthur's 2019 opinions as inconsistent with the medical evidence.  (R. at 31–32.)

"An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record."  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  When, as here, the ALJ disregards a treating physician's medical report, "he must set forth 'specific, legitimate reasons' for his decision."  *Id.*  Moreover, "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  While an ALJ must do more than simply "recite[ ] the general factors he considered," so long as "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," his determination must stand.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In discounting Dr. Arthur's 2019 opinions, the ALJ reasoned that the medical evidence did not support a finding that Higgins was incapable of any work, as Dr.

Arthur's treatment records showed that Higgins had a normal gait, normal muscle tone, and full muscle strength. (R. at 31–32; *see also* R. at 1433, 1435, 1594, 1683, 1716–17.) Moreover, as discussed above, the ALJ considered Higgins's mental functioning and the fact that she reported participating in daily activities such as shopping, driving, doing chores, and socializing with her family. (R. at 24, 28–32.) The ALJ therefore determined that Higgins's allegation that she spent 90% of her time confined to her bed—and Dr. Arthur's conclusion that Higgins was precluded from working—were unsupported by the evidence in the record. (R. at 29–32.) However, the ALJ further found that the medical evidence supported greater limitations than found by both doctors in 2017, and therefore limited Higgins to sedentary rather than light work. (R. at 31.)

To be sure, although some evidence may support a finding that Higgins is disabled, the ALJ provided valid reasons, supported by substantial evidence, for discounting Dr. Arthur's 2019 opinions. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (recognizing the ALJ is entitled to resolve evidentiary conflicts where the record "contains support for both the notion that [claimant] has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe"); *Raymond v. Astrue*, 621 F.3d 1269, 1271 (10th Cir. 2009) (finding that ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that "the ALJ is entitled to resolve any conflicts in the record"); *see also Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (stating that courts may not "displace the agency's choice between two fairly conflicting views").

The Court therefore finds that the ALJ applied the correct legal standards in analyzing the medical opinions, and that his conclusions are supported by substantial evidence in the record.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED. The Clerk shall enter judgment in favor of the Commissioner and against Higgins and shall terminate this case. Each party shall bear her or its own attorneys' fees and costs.

Dated this 21st day of July, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge